# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENCIO RAMOS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO AMERICAN INDIAN HEALTH CENTER,<br><br>Defendant. | Case No. 23-cv-570-MMA-AHG<br><br>**ORDER AFFIRMING TENTATIVE RULINGS, DENYING MOTIONS, AND REMANDING CASE**<br><br>[Doc. Nos. 37, 38] |

On March 6, 2024, Plaintiff Florencio Ramos ("Plaintiff") and San Diego American Indian Health Center ("Defendant") appeared before the Court by telephone for a hearing on Plaintiff's motions for preliminary approval of class settlement. Doc. Nos. 37, 38. In anticipation of the hearing, the Court issued tentative rulings on the motions, *see* Doc. No.41, which the Court affirmed on the record at the conclusion of the hearing, *see* Doc. No. 44. Upon due consideration of Plaintiffs' motions, Defendant's notice of non-opposition, the parties' arguments at the hearing, and for the reasons set forth below, the Court **AFFIRMS** its tentative rulings, **DENIES** Plaintiff's motions, and **REMANDS** this action to state court.

## I. Background

Defendant is a nonprofit corporation that provides healthcare services in San Diego, "with emphasis on the American Indian community." Doc. No. 1-2 ("Compl.") ¶ 25. On May 5, 2022, Defendant detected unusual activity on its network, forcing it to take all of its systems offline. *Id.* ¶ 35. An investigation found evidence of unauthorized third-party access to Defendant's network, which stored patients' personal health information and personally identifiable information ("PHI/PII"). *Id.* ¶¶ 1, 35.

Two weeks after the data breach, Defendant began sending notices to those persons affected by the incident—656,047 patients in total. *Id.* ¶¶ 37, 39. Plaintiff, one of those patients, contends he received notice by letter dated August 15, 2022. *Id.* ¶ 38.

Generally speaking, Plaintiff alleges that Defendant was obligated to protect its patients' PHI/PII and failed to take the necessary precautions to prevent the cyberattack. *Id.* ¶¶ 1–2. Plaintiff initiated this action in state court, asserting eight causes of action: (1) negligence; (2) violation of the Confidentiality of Medical Information Act, Cal, Civ. Code § 56 *et seq.* ("CMIA"); (3) invasion of privacy; (4) breach of confidence; (5) breach of implied contract; (6) breach of the implied covenant of good faith and fair dealing; (7) unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*; and (8) unjust enrichment.

Defendant was served with Plaintiff's state court complaint on August 31, 2022. Doc. No. 1 ("NOR") ¶ 10. On September 16, 2022, Defendant's counsel contacted the U.S. Department of Justice ("DOJ") and U.S. Department of Health and Human Services ("HHS") about the lawsuit and requested that the United States honor its obligations under 25 U.S.C. § 1660i and agree to be substituted into the case as the proper defendant. *Id.* ¶ 11; Doc. No. 3-2 ("Butler Decl." ¶ 3). HHS allegedly represented it would respond to any petition for substitution by removing the action to federal court. NOR ¶¶ 12–13. Thereafter, Defendant's counsel repeatedly reached out to HHS regarding the "promised notice of removal." *Id.* ¶ 15. HHS eventually acknowledged that the DOJ had been "radio silen[t]" on Defendant's request and petition. *Id.*

On November 16, 2023, Defendant filed a petition in state court, requesting that the United States be substituted in its stead. Doc. No. 1-4. The petition was set for hearing in state court on April 7, 2023. *See id.* Less than one week before the hearing on that matter, on March 30, 2023, Defendant removed the action to this Court. *See* NOR. Immediately thereafter, Defendant filed a motion to substitute the United States as defendant in a filing that is virtually identical to the state court petition, *see* Doc. No. 3, and Plaintiff and the United States as an interested third party filed motions to remand, *see* Doc. Nos. 5, 6.

These motions were set for hearing on June 12, 2023. Doc. No. 10. On June 7, Plaintiff and Defendant filed a joint motion to continue the hearing on the motions, explaining that they had agreed to pursue mediation. Doc. No. 19. The government filed an objection, pointing out that it was not a party to the mediation or agreement to mediate. Doc. No. 20. The Court granted the joint motion and terminated the motion to substitute and motion to remand. Doc. No. 21.

On October 2, 2023, Plaintiff and Defendant filed a joint status report indicating that they attended mediation on July 14, 2023, and settled thereafter. Doc. No. 23. After several extensions of time, *see* Doc. Nos. 24–28, 30–36, on January 23, 2024, Plaintiff filed his motion for preliminary approval of class settlement, Doc. No. 37 ("First Approval Motion"). Then, on February 5, 2024, Plaintiff filed an amended motion for preliminary approval of class settlement. Doc. No. 38 ("Second Approval Motion"). Defendant filed a notice of non-opposition to the Second Approval Motion. Doc. No. 39.

## II. Motions for Preliminary Approval

The parties have reached a proposed settlement, which will create a $350,000 Settlement Fund. Doc. No. 38-1 ("Van Note Decl.") Ex. A at 18.[1] The Fund will allow class members to either obtain thirty-six (36) months of identity-theft protection and

---

[1] Unless otherwise noted, all citations refer to the pagination assigned by the CM/ECF system.

fraud resolution services or receive a pro rata cash distribution. *Id.* at 20. Plaintiff requests a class representative service award of $5,000 and $135,000 in attorney's fees and costs. Van Note Decl. ¶ 15. The settlement agreement also calls for Settlement Administrator fees not to exceed $85,000. Van Note Decl. Ex. A at 23.

The First and Second Approval Motions are largely identical but differ in two ways, as confirmed at the March 6 hearing. First, the Second Approval Motion is missing a twenty-seven (27) page attachment that consists of a declaration by Julie Green on behalf of Settlement Administrator CPT Group, Inc. Doc. No. 37-2. Attached to the Green Declaration are: (Exhibit A) CPT's company resume; and (Exhibit B) CPT's estimated discounted flat fee of $44,500. *Id.* at 5–27. Plaintiff offered no explanation for why the Second Approval Motion omits these supporting documents.

Second, the motions differ in who will provide proper notice as is required by the Class Action Fairness Act of 2005 ("CAFA") and when. In the First Motion, Plaintiff explained:

> Within **ten (10) days** of the filing of the Motion for Preliminary Approval, **the Claims Administrator shall serve** a letter and accompanying materials to be provided by Defendant's Counsel on the Attorney General of the United States and each state Attorneys General or others, all **as required by the Class Action Fairness Act**, 28 3 U.S.C. § 1715(b).

Doc. No. 37 at 9–10 (emphasis added).

In the Second Motion, Plaintiff provided:

> Within ***five business days*** of the filing of the Motion for Preliminary Approval, ***Plaintiff shall prepare and provide notice*** on the Attorney General of the United States and each state Attorneys General or others, all ***as required by the Class Action Fairness Act***, 28 U.S.C. § 1715(b).

Doc. No. 38 at 9–10 (emphasis added).

However, CAFA requires that "[n]ot later than ***10 days*** after a proposed settlement of a class action is filed in court, ***each defendant*** that is participating in the proposed

settlement *shall serve* upon the appropriate State official . . . notice of the proposed settlement . . . ." 28 U.S.C. § 1715(b) (emphasis added).

Consequently, neither motion set forth proper compliance with CAFA in terms of providing notice to the relevant authorities; Defendant did not provide notice within 10 days of the date Plaintiff submitted the proposed settlement (the First Approval Motion). But that assumes the parties must comply with CAFA at all, and neither party has ever asserted that the Court has subject matter jurisdiction under CAFA.

### III. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 23(e) the "claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

At the preliminary approval stage, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A). This is because in deciding whether to direct notice the Court must determine if it "will likely be able to" both: (1) "certify the class for purposes of the judgment on proposal"; and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). These determinations are tentative subject to a final approval hearing after notice to the class, as directed in the preliminary approval order, takes place.

However, "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* Therefore, federal subject matter jurisdiction will lie only if authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen*, 511 U.S. at 377.

"A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, . . . ." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019). This is at least in part because such a judgment would be void. A judgment is void "where there is a 'total

want of jurisdiction' as opposed to an 'error in the exercise of jurisdiction.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985)). A "total want of jurisdiction" exists, for example, when the court issuing the judgment lacked jurisdiction over the general subject matter. *Watts*, 752 F.2d at 409.

## IV. DISCUSSION

In both the settlement agreement and the motions for preliminary approval, Plaintiff references CAFA. Defendant asserted in its notice of removal that jurisdiction exists under a variety of statutes, all of which trace back to the exclusive remedy and jurisdiction provision of the Federal Tort Claims Act. The Court begins by considering whether this Court has subject matter jurisdiction under CAFA and then turns to the bases for jurisdiction set forth in Defendant's Notice of Removal.

### A. Class Action Fairness Act

CAFA jurisdiction requires that the case be a putative class action involving: (1) minimal diversity, or in other words, that any member of the class is a citizen of a state different from any defendant; (2) at least 100 putative members; and (3) over $5,000,000 in controversy exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(5)(B). However, the statute also delineates exceptions to CAFA jurisdiction, which in some instances require the district court to decline to exercise jurisdiction. 28 U.S.C. § 1332(d)(4); *see also King v. Great American Chicken Corp., Inc.*, 903 F.3d 875, 878 (9th Cir. 2018) ("The statute includes a number of exceptions that require a federal district court to decline jurisdiction even if the above requirements were met."). The purpose is "to allow truly *intra*state class actions to be heard in state court." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020).

Here, Plaintiff is a resident of California and Defendant is a corporation with a principal place of business in San Diego. *Id.* ¶¶ 12, 24. There is nothing in the record to suggest that either is not a citizen of California. To that end, the proposed class is defined as: "All individuals within the State of California whose PHI/PII and/or financial

information was stored by Defendant and was exposed to unauthorized third-parties as a result of the data breach discovered by Defendant on or around May 5, 2022." Compl. ¶ 28. In light of the fact that Defendant provides "healthcare to members of the San Diego and larger community," *id.* ¶ 25, and in the absence of any additional evidence or argument, there is no basis for the Court to conclude that any class member is a citizen of a state other than Defendant. Moreover, the Complaint and Notice of Removal are silent as to the potential financial exposure of Plaintiff's claims. Put another way, there are no allegations that the amount in controversy exceeds $5 million. For these reasons, the record demonstrates that the requirements for CAFA jurisdiction have not been established.

Even assuming the parties could show there is minimal diversity and that the amount in controversy exceeds $5 million, the Court finds on this record that the home state controversy exception applies, requiring that the Court decline to exercise jurisdiction. Under this exception, "[a] district court shall decline to exercise jurisdiction under [§ 1332(d)(2) where] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

In its tentative ruling, the Court put the parties on notice that, based on the current record, "either CAFA is inapplicable or that the home state controversy exception likely applies, 28 U.S.C. § 1332(d)(4)(b)." Doc. No. 41 at 2. At the hearing, neither party offered argument or evidence tending to show that even one potential class member is not a California citizen, nonetheless that more than one-third are non-California citizens. For these reasons, the Court finds that it lacks subject matter jurisdiction under CAFA. In the alternative, the Court finds that the home state controversy exception applies.

**B.  Defendant's Notice of Removal**

Defendant removed this action pursuant to 28 U.S.C. § 1442(a), 42 U.S.C. § 233(*1*)(2), and 28 U.S.C. § 2679(d). NOR ¶¶ 22–25. Defendant similarly relies on 28 U.S.C. §§ 1441(a), 1442(a)(1), 2679(d), and 1331 for the Court's subject matter

jurisdiction. *Id.* ¶¶ 19–20. Consequently, Defendant in its Notice of Removal relies invariably on the Federal Tort Claims Act ("FTCA"), which includes the Westfall Act, *id.* § 2679(d), the Emergency Health Personnel Act, 42 U.S.C. 233(a), which includes the Federally Supported Health Centers Assistance Act, *id.* § 233(g) ("FSHCAA"), the general removal statute, 28 U.S.C. § 1441(a), and the federal officer removal statute, *id.* § 1442, for both jurisdiction and removal.

The FTCA provides that federal courts have exclusive jurisdiction over claims against the United States. Namely, the FTCA provides that suit against the United States shall be the exclusive remedy for damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1); *see also Sisto v. United States*, 8 F.4th 820, 824 (9th Cir. 2021). The Westfall Act is a part of the FTCA, which "conclusively" vests federal jurisdiction over a suit against a federal employee whom the Attorney General has certified "was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(2). The Westfall Act also sets forth the proper certification and removal procedure. *Id.* "Employee of the government" is defined to include "officers or employees of any federal agency." *Id.* § 2671.

In 1970, Congress enacted the Emergency Health Personnel Act of 1970. 42 U.S.C. § 233(a). Section 233(a) grants absolute immunity under the FTCA to U.S. Public Health Service ("PHS") officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. *See C.K. v. United States*, No. 19-cv-02492-TWR-RBB, 2020 U.S. Dist. LEXIS 211658, at *7 (S.D. Cal. Nov. 12, 2020) (quoting *Hui v. Castaneda*, 559 U.S. 799, 806 (2010)). To be entitled to § 233(a) immunity, the claims must be "for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions . . . , by any . . . employee of the Public Health Service while acting within the scope of his office or employment . . . ." 42 U.S.C. § 233(a).

In 1992, Congress enacted the FSHCAA, which extends § 233(a) immunity to certain outside entities and their employees acting on behalf of PHS. 42 U.S.C. § 233(g); see also *C.K.*, 2020 U.S. Dist. LEXIS 211658, at *7 (citing 42 U.S.C. § 233(g)(1)(A)).

The Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 501 *et seq.* ("ISDEAA") was enacted in 1975 to increase tribal participation in the management of programs and activities on reservations by authorizing tribes and tribal organizations to enter into contracts, called "self-determination contracts," with either the Secretary of HHS or the Secretary of the Interior. 25 U.S.C. § 5304(i), (j). Under such contracts, an "Indian contractor" agrees to undertake responsibility "for the planning, conduct, and administration of programs or services that are otherwise provided to Indian Tribes and members of Indian Tribes pursuant to Federal law." *Id.* § 5304(j).

In 1987, Congress amended the ISDEAA to extend the FTCA to Indian Contractors carrying out a self-determination contract. As amended, 25 U.S.C. § 5321(d) provides that for purposes of § 233, "Indian contractors and their employees are deemed to be employees of the United States Public Health Service, thus making the FTCA applicable to suits against them arising out of the medical services provided." *Sisto*, 8 F.4th at 826.

In January 2021, Congress enacted the Indian Healthcare Improvement Act, 25 U.S.C. § 1601 *et seq.*, and § 5321(d) was statutorily extended to Urban Indian Organizations ("UIO"). 25 U.S.C. § 1660i.

Defendant asserts that it is a UIO. NOR ¶ 3. According to Defendant, following the chain of statutes identified above, it has immunity under § 233(a) and the FTCA provides the exclusive remedy for Plaintiff's claims. *Id.* ¶ 4.

For this reason, Defendant's removal was based in part on 42 U.S.C. § 233(*l*)(2). *Id.* ¶ 24. This statute permits the removal of a case to federal court for a hearing and determination of PHS employee status for purposes of § 233(a) immunity if the Attorney General fails to appear in state court within 15 days of being notified of an action that is subject to such a determination. 42 U.S.C. § 233(*l*)(2). The law is clear that upon a

determination that the defendant is "deemed" a PHS employee, the FTCA's exclusive remedy against the United States applies. *See* 42 U.S.C. § 233(a), (g)(1)(A). But Defendant no longer seeks § 233(a) immunity and has instead voluntarily elected to remain the defendant in this action. And the government played no role in Defendant's settlement of Plaintiff's claims. So even assuming Defendant's removal pursuant to this statute was proper, because Defendant has abandoned its request for a determination and hearing under § 233(*l*)(2), remand is appropriate on this basis.

Turning to the remaining bases for Defendant's removal, §§ 1441(a) and 1442, Defendant's removal was woefully untimely. Title 28 of the United States Code, section 1446(b) provides two thirty-day deadlines for removal. The first thirty-day period is triggered "if the case stated by the initial pleading is removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). As to the second thirty-day deadline: "even if a case were not removable at the outset, if it is rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper,' then the second thirty-day window is in play." *Id.* The 30-day deadline is applicable to Defendant's removal to the extent it removed this action pursuant to the general removal statute, § 1441, as well as the federal officer removal statute, § 1442. *See, e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

Untimely removal is a procedural defect. *See Maniar v. F.D.I.C.*, 979 F.2d 782, 784 (9th Cir. 1992). And although the time limits under section 1446 are procedural rather than jurisdictional, they nevertheless are "mandatory and a timely objection to a late petition will defeat removal . . . ." *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014) (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)).

Section 1447(c) provides that procedural defects—unlike jurisdictional defects—can only be raised "within 30 days after the filing of the notice of removal." A plaintiff's failure to challenge a procedural defect before this deadline constitutes a waiver, and the Court cannot sua sponte remand based upon procedural defects. *See Corona-Contreras v. Gruel*, 857 F.3d 1025, 1030 (9th Cir. 2017).

Defendant removed this action seven months after being served with the Complaint. There is no dispute that the basis for removal appeared plain at the inception of this case given that defense counsel contacted the DOJ and HHS for substitution and removal less than two weeks later. NOR ¶¶ 10–11. And here, the procedural defect was not waived—both Plaintiff and the government filed motions to remand based upon, among other things, untimeliness. Doc. No. 5 at 9–11; Doc. No. 6 at 12–13. Defendant effectively conceded that its removal under §§ 1441 and 1442 was procedurally defective, as it never substantively opposed this basis for remand. *See generally* Doc. No. 13. Therefore, in light of Defendant's abandonment of its request for a determination under § 233(a), and because Defendant's removal was otherwise procedurally defective, this case is subject to remand.

But setting aside the untimeliness of Defendant's removal, the Court finds that it lacks subject matter jurisdiction as there is no federal question, original, or federal officer removal jurisdiction under the FTCA absent substitution.

### 1.  *Federal Question Jurisdiction*

A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). First, in support of this Court's jurisdiction, Defendant identifies § 1441(a). NOR ¶ 19. However, § 1441 is merely the general removal statute, and subsection (a) allows for removal in cases where courts have original jurisdiction. This statute provides no independent basis for jurisdiction. But Defendant later alleges that the Court has federal question jurisdiction under § 1331 based upon the FTCA. NOR ¶ 21. In full:

> 21. The Court also has jurisdiction under the FTCA, 28 U.S.C. § 2679(d), and 28 U.S.C. § 1331, to assess whether the underlying action resulted from "the performance of medical, surgical, dental or related functions" within the scope of SDAIHC's status as a PHS employee and whether the United States must be substituted as the only proper defendant.

NOR ¶ 21.

"A cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "well-pleaded complaint rule is the basic principle marking the boundaries of the federal question jurisdiction" in district courts. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (internal citation omitted). Federal courts must strictly construe the removal statute against removal jurisdiction and resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Here, there is no federal question on the face of Plaintiff's Complaint as Plaintiff alleges only state law causes of action. And it is well settled that a federal defense does not give rise to federal question jurisdiction. *See Caterpillar*, 482 U.S. at 393. Cases proceeding against the government under the FTCA are removable not because the complaints present a federal question but because Congress has elsewhere decided that federal courts have exclusive original jurisdiction over these actions. 28 U.S.C. § 2679(b)(1). As such, the Court finds that it lacks federal question subject matter jurisdiction. *Id.* § 1331.

### 2. *Original Jurisdiction under the Federal Tort Claims Act*

To the extent Defendant asserts this Court has original subject matter jurisdiction under the Westfall Act or the FTCA generally, the Court disagrees. A case does not proceed under the FTCA until it has been certified that the named defendant was acting within the scope of his office or employment, and the government has been substituted. 28 U.S.C. § 2679(d)(1) ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."). Neither the Attorney General, this Court,

nor the state court has certified that Defendant was acting within the necessary scope for FTCA coverage. And the government has not been substituted as the party defendant. As a result, this case is not proceeding under the FTCA.

More specifically, Defendant's reliance on the Westfall Act, 28 U.S.C. § 2679(d)(2), is misplaced. Nothing in the Westfall Act permitted Defendant, merely by claiming FTCA coverage, to remove this case to federal court. *See* NOR ¶ 25. Rather, the Westfall Act provides that "the defendant-employee may petition the court in which the action was instituted to make the scope-of-employment certification" and "[i]f the complaint was filed in a state court, the Attorney General *may* remove the case to the appropriate federal court, but he is not obliged to do so." *Osborn v. Haley*, 549 U.S. 225, 241 (2007). Here, Defendant petitioned the state court for certification but short-circuited the proper process by removing this case on the eve of that determination. And most importantly, Defendant has abandoned its motion to substitute, and thus its request that the Court certify FTCA coverage. The Westfall Act is clear that if "the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court." 28 U.S.C. § 2679(d)(3). Defendant's abandonment of its motion to substitute is tantamount to a concession that it was not acting within the necessary scope and therefore that it is not immune from suit and that the FTCA does not apply. Because if it did, Defendant would no longer be a party to this action. Under the Westfall Act, then, it appears that this case must be remanded.

The Fifth Circuit case of *Mitchell v. Bailey* is instructive. 982 F.3d 937, 941 (5th Cir. 2020) ("But make no mistake, the Westfall Act does not confer independent jurisdiction on a federal court to hear a certification petition at the request of a purported employee."). In *Mitchell*, an individual sued a federally recognized Indian tribe's "Community Corps," which was a federal grant recipient, for injuries the plaintiff sustained while working for the Community Corps. *Id.* at 939. The suit was originally filed in federal court, and defendants moved to dismiss and moved to substitute the

government as the defendant. *Id.* at 940. The district court granted the Rule 12(b)(1) motion to dismiss on the basis of sovereign immunity and denied the motion to substitute as moot without addressing the merits of that request. *Id.* On appeal, the Fifth Circuit found that the district court never had original jurisdiction over the action. *Id.* It reasoned:

> The Attorney General never granted a certification in this case, and the district court never entertained the motion for certification at all. In short, there is no support for Mitchell's position that an unresolved motion, filed by [defendants] asserting a federal law as a defense, should vest the district court with original jurisdiction over the action.

*Id.* at 940–41.

As was the case in *Mitchell*, Defendant's unresolved substitution motion, in which Defendant asserts its immunity to suit as a federal defense, does not provide this Court with original jurisdiction. So in the absence of substitution, the Court finds that it lacks subject matter jurisdiction under the FTCA, including the Westfall Act.

### 3. Federal Officer Removal

Defendant also asserts that the Court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). NOR ¶ 20. As an initial matter, to invoke § 1442, the removing party must allege in the removal notice that "(1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [it] took pursuant to a federal officer's direction [i.e., it acted under color of federal office], and (3) it has a 'colorable' federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citation omitted); *see also Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021) (citation omitted). Defendant does not plead that it is a "person" as defined by the statute. Rather, Defendant alleges:

> 20. The Court also has jurisdiction under the general officer removal statute, 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any

agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute permits removal even when the underlying federal question arises only as a defense to a state-law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule). The general officer removal statute protects important federal interests, and must be broadly construed in favor of a federal forum. *See Colorado v. Syme*s, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."), *Willingham v. Morgan*, 395 U.S. 402, 406–407 (1969) (finding § 1442's language "broad enough to cover all cases where federal officers can raise a colorable defense arising out of

NOR ¶ 20.[2]

These are not facts, they are legal conclusions. Elsewhere, Defendant asserts in support of its reliance on the federal officer removal statute:

> 22. Under 28 U.S.C. § 1442(a), an action filed in a state court may be removed to a federal district court if the action is against the United States or any of its agencies, officers, or persons acting under its officers. Accordingly, this action is removal pursuant to 28 U.S.C. § 1442(a) because SDAIHC is deemed to be part of the federal government. See supra ¶¶ 1-4

NOR ¶ 22.

At the end of the day, this paragraph is of no assistance to Defendant either. Paragraphs 1 through 4 track Defendant's asserted coverage under the FTCA: the FTCA, *id.* ¶ 1, extends to UIOs, *id.* ¶ 2, HHS has identified Defendant as a UIO, *id.* ¶ 3, and the FTCA therefore extends to Defendant under § 233(a), *id.* ¶ 4. The Court does not disagree that Defendant facially alleged that it acted under color of federal office and has a colorable federal defense. *See Friedenberg v. Lane Cty.*, 68 F.4th 1113, 1124 (9th Cir.

---

[2] The Court notes that the trailing final sentence is not a typographical error on the Court's end but is reprinted here exactly as it reads in Defendant's Notice of Removal.

2023). But Defendant's argument in support of subject matter jurisdiction that it has immunity under § 233(a), misses the point and is, at this juncture, moot.

"When § 233 immunity applies, the United States is substituted as the defendant and the action proceeds as one brought under the [FTCA]." *Id.* at 1118; *cf. Hui*, 559 U.S. at 801. If the Court were to accept that Defendant is a PHS employee by virtue of its recognition as a UIO and receipt of federal funds, the Court must substitute the government as the defendant. Only then would the action be deemed one brought against the United States under the FTCA. But Defendant no longer seeks immunity under § 233(a) and no longer asks the Court to substitute the government as the defendant. This is fatal because Defendant's reliance on the federal officer removal statute rests wholly on its abandoned assertion of immunity and applicability of the FTCA.

Additionally, permitting Defendant's removal under the federal officer removal statute to stand while simultaneously finding that Defendant circumvented the proper removal procedure under the relevant statutes, and abandoned its request for a hearing and determination under § 233(*l*)(2) including its asserted immunity under § 233(a), would amount to an end-run around the FTCA's removal provisions, which are more specific and therefore controlling. *Gozlon-Peretz v. United States*, 498 U.S. 395, 396 (1991) ("[A] specific provision controls one of a more general application."). Moreover, Defendant cannot rely on its PHS employee status to show that it acted under the color of federal office for removal purposes because the statute expressly provides that such a determination is only "[f]or purposes of this section." 42 U.S.C. § 233(g)(1)(A).

Absent a finding that Defendant is immune from suit and substitution of the government, the Court cannot maintain subject matter jurisdiction over this case under the federal officer removal statute. Consequently, even assuming the Court ignores the procedural defect of untimeliness and finds that Defendant adequately pleaded the requirements for federal officer removal, the asserted basis for subject matter jurisdiction under the federal officer removal statute no longer exists and the Court therefore must remand on this basis as well. *See* 28 U.S.C. § 1447(c).

### C. Summary

At bottom, this case came to federal court for a determination of whether Defendant was entitled to immunity under § 233(a) and thus, whether this action should proceed against the government under the FTCA. Defendant's removal was timely only to the extent it was brought pursuant to 28 U.S.C. § 233(*l*)(2) for such a determination. But Defendant no longer seeks immunity under § 233(a), application of the FTCA, or substitution of the United States into this action. Rather, Defendant asks the Court to approve its settlement with Plaintiff. Defendant cannot ask the Court to find subject matter jurisdiction under the FTCA but not apply it. And Plaintiff's reference to CAFA in his motions for preliminary approval does not provide the Court with subject matter jurisdiction over this action.

The parties were provided with advance notice of these issues by way of the Court's tentative ruling, and they offered no additional argument or evidence beyond what is set forth in the current record at the hearing. Nor did the parties accept the Court's invitation to submit additional briefing on these issues. On this record, and in the absence of substitution, the Court finds that it lacks subject matter jurisdiction over this action and therefore cannot approve, preliminarily or otherwise, the parties' settlement.

## V. CONCLUSION

Based upon the foregoing, the Court **DENIES** Plaintiff's motions for preliminary approval without prejudice and **REMANDS** this case to the Superior Court of California, San Diego County. The Court **DIRECTS** the Clerk of Court to return this case to state court forthwith and close this case.

**IT IS SO ORDERED**.

Dated: March 14, 2024

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge